## HARRY D. MIGGINS *v.* STATE OF MARYLAND.
### [No. 30, April Term, 1936.]

*Decided May 20th, 1936.*

The cause was argued before BOND, C. J., OFFUTT, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Calvert K. Hartle*, for the appellant.

*Herbert R. O'Conor, Attorney General, Charles T. LeViness, III, Assistant Attorney General,* and *Martin L. Ingram, State's Attorney for Washington County,* submitting on brief, for the State.

OFFUTT, J., delivered the opinion of the Court.

The grand jury for the February term, 1936, for Washington County, indicted Harry D. Miggins, the appellant, for establishing, using, keeping, and occupying a certain "house, building, grounds and place, and a portion of a certain house, building, grounds and place, within the state of Maryland, situate on the second floor of the Arcade building on West Washington Street in Hagerstown, Washington County, Maryland, for the purpose of making, selling and buying books and pools therein and thereon upon the result of any race, contest and contingency." To that indictment Miggins demurred. The demurrer was overruled, he then confessed a plea of guilty, sentence was imposed, and judgment entered. The appeal is from that judgment.

The effect of the appellant's plea of guilty was to waive proof of any facts alleged in the indictment, but not to waive objection to it on the ground that the facts alleged did not constitute an indictable offense, nor to waive objection to the jurisdiction of the court to try him under it. 16 *C.J.* 402 et. seq. Those questions may therefore be considered on this appeal.

The offense charged in the indictment is defined in Code, art. 27, sec. 247, which reads in part as follows: "It shall not be lawful for any person or persons, or association of persons, or for any corporation within the State of Maryland, to bet, wager or gamble in any manner, or by any means, or to make or sell a book or pool on the result of any trotting, pacing or running race of horses or other beasts, or race, contest or contingency of any kind, or to establish, keep, rent, use or occupy or knowingly suffer to be used, kept or rented or occupied,

any house, building, vessel, grounds or place, or portion of any house, building, vessel, grounds, or place, on land or water, within the State of Maryland, for the purpose of betting, wagering or gambling in any manner, or by any means, or making, selling or buying books or pools therein or thereon upon the result of any race or contest or contingency." It is apparent from that language that the statute defines not one but several offenses, one of which is to "bet, wage or gamble * * * or sell a book or pool on the result of any trotting, pacing or running race of horses or other beasts, or race, contest or contingency of any kind." Another is to "establish, keep, rent, use or occupy * * * any house, building, vessel, grounds or place * * * for the purpose of * * * making, selling or buying books or pools therein or thereon upon the result of any race or contest or contingency."

The offense charged in the indictment is not that of making, buying, or selling books or pools on races, but that of keeping, using, and occupying a certain "house, building, grounds and place, and a portion of a certain house, building, grounds and place" for that purpose.

Code, art. 27, sec. 247, is a codification of chapter 232 of the Acts of 1894, amended by chapter 285 of the Acts of 1898. In *Stearns v. State*, 81 Md. 341, 32 A. 282, it was held that the information in that case, which was based on that statute, was bad because in each count thereof it stated both offenses in the disjunctive or alternative. While the court was dealing there with the Act of 1894, the amendment made by the Act of 1898 did not materially change that part of it which is under consideration here. In that case it was held that each offense could properly have been charged in a separate count, or both might have been stated in the same count if connected by the conjunctive "and" instead of by the disjunctive "or." In the indictment in this case, what the court held in *Stearns v. State* to be a separate offense has been stated separately, and the count under consideration therefore was free of the vice which invalidated the in-

dictment in the *Stearns* case. *Pritchett v. State*, 140 Md. 310, 313, 117 A. 763.

It is suggested, however, that it does not charge the crime in the language of the statute and that it fails to apprise the defendant of the essential elements of the supposed crime which it does charge. The force of those criticisms is not readily apparent. The indictment does in fact charge the offense in the very language of the statute, as will appear from any comparison of the two, the statute and the indictment.

The objection that it fails to apprise the defendant of the elements of the crime seems to rest upon its failure to state that defendant operated a place for the purpose of making, selling, and buying books upon the result of some particular race, contest, or contingency. But the very essence and purpose of the statute was to make it unlawful to operate a place for making, selling, or buying books upon "any" race, contest, or contingency. The evil at which it was aimed was that of keeping a place where such operations might be carried on. Keeping an inn at which persons may board is one thing, boarding in an inn is another. In this case the indictment charges that on the 24th day of August, 1935, the defendant unlawfully did establish, keep, use, and occupy a place specifically named and identified, for the purpose of making, selling, buying books and pools upon the result of "any" race, contest, and contingency.

Since the indictment followed the language of the statute and alleged facts sufficient to fully apprise the defendant of the particular offense with which he was charged, it was sufficient. *Joyce on Indictments*, sec. 454; *Kearney v. State*, 48 Md. 16; *Parkinson v. State*, 14 Md. 184.

It is further suggested that for reasons not very clearly disclosed the act is unconstitutional and it is also stated that the act "had been previously declared unconstitutional in *Close v. Southern Maryland Assn.*, 134 Md. 629, 644, 108 A. 209. That statement is erroneous, the court in that case did strike down certain li-

censing provisions of the statute, but it expressly approved the particular section of the act upon which the indictment in this case is based (134 Md. 629, at page 644, 108 A. 209), and in *O'Connell v. State,* 159 Md. 376, 150 A. 735, it was held that the invalidity of those parts of the statute stricken down in *Close v. Southern Maryland Assn., supra,* did not affect that part of chapter 285 of the Acts of 1898, section 124e, later codified as Code, art. 27, sec. 251, which exempted Washington County from the operation of the act. That exemption was repealed by chapter 390 of the Acts of 1935, the validity of which was sustained in *Miggins v. Mallott,* 169 Md. 435, 182 A. 333. The effect of that legislation was to bring Washington County within the operation of the general law announced in Code, art. 27, sec. 247. *Miggins v. Mallott, supra.*

It is also suggested in this court, for the first time in this case, that chapter 390 of the Acts of 1935 is invalid because, it is said, the House Journal shows that the yeas and nays were not recorded on the final passage of the bill, as required by the Maryland Constitution, art. 3, sec. 28. That objection cannot be considered in this court for these reasons: This is a court of appellate and not original jurisdiction, and legislative journals are not subjects of judicial notice (*Wigmore Evidence,* sec. 2577), but must be proved as other facts are proved. In *Baltimore Fidelity Warehouse Co. v. Canton Lumber Co.,* 118 Md. 135, 138, 84 A. 188, 189, it was said: "The court, however, in the case of *Berry v. Baltimore & Drum Point R. Co., supra,* [41 Md. 446], cautiously observed that they did not decide therein that the journals of the two houses, though required by the Constitution to be kept as records of the proceedings, would be evidence *per se* upon which the validity of a statute having the required authentication could be successfully questioned as to the manner of its enactment, but held that the journals, in connection with other competent evidence upon the subject, could be examined as a means of information to aid in arriving at a correct conclusion as to what was the action of the Leg-

islature on any particular bill before it." In *Ridgely v. City of Baltimore,* 119 Md. 567, 585, 87 A. 909, 915, it was said: "It would seem to be definitely settled in this state that an authenticated statute cannot be impeached by the legislative journals alone, or by mere parol evidence. *Fouke v. Fleming,* 13 Md. 392 [413, 414]," and in *Jessup v. City of Baltimore,* 121 Md. 562, 566, 89 A. 103, 104: "Even the legislative journals do not of themselves have such a probative quality and are entitled to be considered only in connection with other competent proof. *Fouke v. Fleming,* 13 Md. 392; *Berry v. Baltimore Drum Point R. Co., supra; Ridgely v. Baltimore City, supra; Baltimore Fidelity Warehouse Co. v. Canton Lumber Co.,* 118 Md. 139, 84 A. 188."

This case comes up on a demurrer to the indictment, the objection now made was not presented to the lower court, nor could it have been presented in that form. There was therefore nothing to overcome the presumption that a regularly enrolled statute appearing in the statute book had been regularly and properly passed, and that every constitutional requirement essential to its validity had been observed (59 *C. J.* 625-627, citing *Legg v. Annapolis,* or, as stated in *Legg v. Annapolis,* 42 Md. 203, 223, 224: "But the question whether a statute has been constitutionally enacted by the Legislature cannot be tried upon mere *ex parte* affidavits, nor upon any other than the best and most reliable evidence. As opposed to the allegations of the petition, the statute itself, as published by authority, furnished at least a strong *prima facie* cause against granting the writ; and of the statute the court was bound to take judicial notice. The onus of proof was upon the appellees, with a strong presumption against the right asserted by them, and before that right could be recognized and judicially declared, in the face of a public statute, having almost a conclusive presumption in its support, the appellees were bound to furnish the most conclusive evidence of the truth of the facts upon which they rely to invalidate the statute."

A further objection, that chapter 390 of the Acts of 1935 is unconstitutional because it amends another act not mentioned either in the title or the body of the Act of 1935 has been so fully and so recently considered, *Miggins v. Mallott, supra,* that no further discussion of it is warranted, except to say that in that case the question was, after a very elaborate analysis of the relevant statutes and constitutional provisions relevant, considered by this court and decided adversely to appellant's contention.

Since the indictment was sufficient and the statute upon which it is based valid, it follows that the demurrer to it was properly overruled, and the judgment from which this appeal was taken must be affirmed.

*Judgment affirmed, with costs.*